IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LIFE CARE CENTERS OF AMERICA, INC.,

        Plaintiff,

v.                                               CIV 17-0249 KBM/KK

ESTATE OF JEWEL BLAIR, Deceased,
By and through Personal Representative
DAVID RHODEN,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion and Memorandum of Law in Support of Its Motion to Compel Arbitration, filed on March 11, 2017 (*Doc. 5*), and Defendant's Motion to Dismiss, filed on March 24, 2017 (*Doc. 13*). Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 7*, *11*. The Court has heard oral argument on this matter (*see Doc. 31*), and has given due consideration to the record, submissions of counsel, and relevant law. The Court finds that Plaintiff has established that diversity jurisdiction exists in this matter and that this Court should exercise its discretion and grant Plaintiff's request to compel arbitration of the underlying dispute between the parties to this action.

## I. Background

Ms. Jewel Blair, now deceased, was admitted to Life Care Center of Farmington (the "Facility"), a 24-hour nursing facility, on October 13, 2006. *Doc. 1-5* (*State First Am. Compl.*) ¶ 22. Ms. Blair designated her son, Mr. David Rhoden, to serve as her general

power of attorney on June 19, 2006. *Docs. 1* (*Compl.*) ¶ 6; *1-1*. Mr. Rhoden signed the

forms necessary to admit his mother to the Facility on October 13, 2006. *See Docs. 1-2*;

*1-3*. Relevant to this Motion, Mr. Rhoden signed the Voluntary Agreement for Arbitration

(the Arbitration Agreement). *Doc. 1-2*.

The Arbitration Agreement provides:

> The following is an agreement (the "Arbitration Agreement") to arbitrate any dispute that might arise between <u>Jewel Blair</u> (the "resident") and <u>LCC of Farmington</u> (the "Facility"). ("Facility" includes the particular facility where the Resident resides and Life Care Centers of America, Inc.) . . .
> The parties agree that they shall submit to binding arbitration all disputes against each other and their agents, partners, officers, directors, shareholders, owners, employees, representatives, members, fiduciaries, governing bodies, subsidiaries, parent companies, affiliates, insurers, attorneys, predecessors, successors and assigns, or any of them, and all persons, entities or corporations with whom any of the former have been, are now or may be affiliated, arising out of or in any way related or connected to the Resident's stay and care provided at the Facility, including but not limited to any disputes concerning alleged personal injury to the Resident caused by improper or inadequate care, including allegations of medical malpractice; any disputes concerning whether any statutory provisions relating to the Resident's rights under New Mexico law were violated; and any other dispute under New Mexico or federal law based on contract, tort, or statute. . . .
> All claims based in whole or in part on the same incident, transaction, or related course of care or services provided by the Facility to the Resident, shall be arbitrated in one proceeding.

*Doc. 1-2* at 1, 2.

Plaintiff contends that Ms. Blair suffered injuries, pain, and suffering while in the

Facility's care. *State First Am. Compl.* ¶¶ 27-33. Ms. Blair eventually passed away,

allegedly as a result of the inadequate care and treatment she received at the Facility.

*Id.* ¶ 33. Mr. Rhoden was appointed personal representative of Ms. Blair's estate and

filed the First Amended Complaint in the Eleventh Judicial District Court, County of San

Juan, State of New Mexico, on September 2, 2016, which includes a claim for wrongful death. *See id.* at 1, ¶ 2.

Mr. Rhoden named five defendants in his First Amended Complaint: Life Care Centers of America, Inc., a Tennessee Corporation ("Life Care"), the Farmington Facility, Ms. Sandra Emily Rowe, Administrator, Ms. Brenda Carley-Dostaler, Administrator, and Ms. Sandra K. Valentine, LPN (collectively, "state court defendants"). *See id.* at 1. All of the named defendants in the state case are represented by the same attorneys as Plaintiff in this case. *See Doc. 13* at 18-19; *see also Doc. 13-B* ("Defendants, Farmington Operations, LLC, d/b/a Life Care Center of Farmington, Life Care Centers of America, Inc., Sandra Emily Rowe, Brenda Carley-Dostaler, and Sandra K. Valentine ('Defendants') by and through their attorneys of record Modrall Roehl Harris & Sisk, P.A. (Michelle A. Hernandez and Tomas J. Garcia)").

In their October 6, 2016 Answer to Mr. Rhoden's First Amended Complaint, the state court defendants did not specifically assert arbitration as an affirmative defense in their answer. *See Doc. 13-B*; *see also Doc. 13* at 18. Defendants do reference here, however, the eleventh affirmative defense set forth in their Answer which states that "federal law preempts any conflicting state law and state statutory law preempts any conflicting state common law." *Doc. 13-B* at 4.

In addition to some discovery practice in the underlying dispute (detailed later in Section III.C), the parties also stipulated to a scheduling order in state court that was entered on December 16, 2016. *Doc. 13-N*. The state court presiding judge held a scheduling conference at which the judge set the case for trial in 2018. *Doc. 13* at 19; *see also Doc. 13-O*.

Only one of the five named defendants, Life Care of America, filed the instant Complaint to Compel Arbitration in this federal district court on February 21, 2017. *See Compl.* The Estate opposes Life Care's Motion to Enforce the Arbitration Agreement filed on March 11, 2017 (*Doc. 5*), and has responded by filing a Motion to Dismiss on March 24, 2017. *Doc. 13.*

## II. Legal Standard

### A. Motion to Compel Arbitration Standard

In determining whether the parties agreed to arbitrate, the Court "must give 'the opposing party the benefit of all reasonable doubts and inferences that may arise.'" *Fundamental Admin. Servs., LLC v. Patton*, 504 F. App'x 694, 698 (10th Cir. 2012) (quoting *DeArmond v. Halliburton Energy Servs., Inc.*, 81 P.3d 573, 576 (N.M. Ct. App. 2003) (internal quotation omitted); citing *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014) ("finding that a court may grant a motion to compel arbitration when, 'viewing the facts in the light most favorable to the party opposing arbitration[,]' it is clear that the parties actually agreed to arbitrate") (citation omitted)).

The Federal Arbitration Act ("FAA") "provides a procedure for parties to compel arbitration . . . ." *See* 9 U.S.C. § 4. However, courts must first establish whether an enforceable agreement to arbitrate exists. *Howard*, 748 F.3d at 978. "The party attempting to compel arbitration carries the burden of demonstrating a valid arbitration agreement." *Id.* (quoting *Corum v. Roswell Senior Living, LLC*, 248 P.3d 329, 331 (N.M. Ct. App. 2010) (internal citations omitted)). "When parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted

unless there are no genuine issues of material fact regarding the parties' agreement." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1283 (10th Cir. 1997) (citation omitted).

Because "arbitration is a matter of contract," courts "apply state contract formation principles [in order to] decide whether or not the parties agreed to arbitrate." *Howard*, 748 F.3d at 977 (quotation and citation omitted)). The New Mexico Uniform Arbitration Act, N.M. Stat. Ann. §§ 44-7A-1 through 44-7A-32 ("NMUAA"), "provides that an agreement to submit any controversy arising between the parties to arbitration is 'valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.'" *Thompson v. THI of N.M. at Casa Arena Blanca, LLC*, No. CIV 05-1331 JB/LCS, 2006 WL 4061187, at *4 (D.N.M. Sept. 12, 2006) (quoting N.M. Stat. Ann. § 44-7A-7(a)). "Similar to the federal courts' interpretation of the FAA, New Mexico courts have viewed the NMUAA as an expression of a public policy favoring arbitration." *Id.* (citing *United Tech. & Res., Inc. v. Dar Al Islam*, 846 P.2d 307, 309 (N.M. 1993)). "In New Mexico, when the court finds that an arbitration agreement exists, then, in accordance with the NMUAA, the court has a duty to enforce the provisions of the agreement and order adherence to that arbitration agreement." *Id.* (citing *Bernalillo Cty. Med. Ctr. Emps. Ass'n Local 2370 v. Cancelosi*, 587 P.2d 960, 961 (N.M. 1978)).

**B.  Standard for Motions to Dismiss Under Rule 12(b)(1)**

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Fishback v. HSBC Retail Servs. Inc.*, No. CIV 12-0533 JB, 2013 WL 3227458, at *7 (D.N.M. June 21, 2013) (quoting *Henry v.*

*Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (internal citations omitted)). "A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims." *Id.* (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998) (internal citation omitted)).

A party may dispute the court's lack of subject-matter jurisdiction by filing a motion pursuant to Rule 12(b)(1). *Id.* Such motions "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based." *Id.* (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (alteration in original, internal citation omitted)).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. *See Ruiz v. McDonnell*, 299 F.3d at 1180; *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

*Id.* at *7-8 (quoting *Hill v. Vanderbilt Capital Advisors, LLC*, No. CIV 10-0133, 2011 WL 6013025, at *8 (D.N.M. Sept. 30, 2011) (internal quotation omitted)).

**III. Analysis**

Mr. Rhoden offers several theories in support of his Motion to Dismiss and his Response to Life Care's Motion to Compel: (1) the Court lacks subject matter jurisdiction; (2) the state court defendants are indispensable parties; (3) Life Care has waived its right to arbitrate; (4) equitable estoppel applies; and (5) the rules of the American Arbitration Association (AAA) render the Arbitration Agreement

unenforceable. *See Docs. 13*; *14*. The Court will begin by examining the issues relating to this Court's subject matter jurisdiction.

## A. This Court has diversity subject matter jurisdiction.

"[T]he FAA does not itself confer subject matter jurisdiction." *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1054 (10th Cir. 2006) (citations omitted). Indeed, Section 4 of the Federal Arbitration Act provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C.A. § 4. In other words, an action to enforce an agreement to arbitrate must have an independent basis for the federal court to exercise subject matter jurisdiction:

> The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise. . . . [T]here must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983) (citations omitted).

Here, Life Care premises enforcement of the arbitration agreement at issue on diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). It is uncontroverted that the named parties – Plaintiff Life Care and the Defendant Estate – are citizens of different states and the amount in controversy exceeds the requisite $75,000 minimum.

Historically, the Courts of Appeal have been "unanimous in looking only to the citizenship of the parties to the federal action" when determining the existence of **diversity** as the independent basis for subject matter jurisdiction. *Northport Health Servs. of Ark., LLC v. Rutherford*, 605 F.3d 483, 489 (8th Cir. 2010) (*"Rutherford"*).

For instance, in *Moses H. Cone*, the Hospital had "entered into a contract for the construction of additions to the Hospital building." 460 U.S. at 4. The contract between the Hospital and Mercury (the construction company) included an arbitration clause. *Id.* After substantial construction was completed, a dispute arose regarding delay and costs. *Id.* at 6. The Hospital filed a declaratory judgment action in state court, naming as defendants Mercury and the independent Architect, who had been hired by the Hospital to design and oversee the project. *Id.* at 7. Although the construction company was a citizen of a state different from the Hospital and therefore diverse, the Architect was not. *See id.* at 7 n.4. Mercury then filed a § 4 petition against the Hospital in federal court to compel arbitration with the Hospital as contemplated by its contract. *Id.* at 7. The federal district court stayed that lawsuit pending resolution of the concurrent state-court action.

The Supreme Court in *Moses H. Cone* examined whether the district court should have stayed the "federal suit out of deference to the parallel litigation brought in state court." *Id.* at 13 (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)). Applying the *Colorado River* factors, the Court found "no showing of the requisite exceptional circumstances to justify the District court's stay." *Id.* at 19. The *Moses H. Cone* Court thus rejected the trial court's "abdication" of its duty to exercise jurisdiction over the diversity action. *See id.* at 14. In doing so, the Supreme Court noted that the Hospital "ha[d] two substantive disputes here – one with Mercury concerning

Mercury's claim for delay and impact costs, and the other with the Architect, concerning the Hospital's claim for indemnity for any liability it may have to Mercury." *Id.* at 20. In determining that the trial court was obliged to exercise its diversity jurisdiction over the § 4 petition, the Supreme Court did not examine whether the non-diverse Architect was a necessary and indispensable party pursuant to Rule 19.

Mr. Rhoden nevertheless contends that this Court lacks subject matter jurisdiction over the instant § 4 petition because Life Care's Complaint does not represent the "whole of the controversy." *Doc. 13* at 3-11. Mr. Rhoden argues that if the court looks to the entire controversy encompassed in the state court case, federal jurisdiction would fall away because the remaining named state court defendants are non-diverse New Mexico citizens. In essence, Mr. Rhoden maintains that in order to compel arbitration, the federal court must have subject matter jurisdiction over the entire controversy, and he relies on the Supreme Court's reasoning in *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009), to support this position.

In *Vaden*, the Supreme Court examined the above-cited language in 9 U.S.C. § 4 and determined that the issue presented was two-fold: (1) "Should a district court, if asked to compel arbitration pursuant to § 4, 'look through' the petition and grant the requested relief if the court would have federal-question jurisdiction over the underlying controversy?" *Vaden*, 556 U.S. at 53. If the answer is yes, (2) "may a district court exercise jurisdiction over a § 4 petition when the petitioner's complaint rests on state law but an actual or potential counterclaim rests on federal law?" *Id.* The *Vaden* Court determined that it was indeed necessary to perform a "look through" to the underlying controversy to ascertain an independent basis for ***federal-question*** subject matter

jurisdiction. *Id.* It further found that, consistent with the well-pleaded complaint rule, federal jurisdiction cannot be exercised over a § 4 petition if the underlying claims rest on state law and only the counterclaim rests on federal law. *Id.* at 53-54.

Since *Vaden*, state court plaintiffs have attempted to extend *Vaden*'s reasoning to ***diversity-based*** § 4 petitions in an effort to preclude a federal court from issuing an order compelling arbitration. They have argued, as does Mr. Rhoden here, that federal jurisdiction over a diversity-based § 4 petition to compel arbitration is simply unavailable when a "look through" to the underlying controversy implicates non-diverse state court defendants.

The Eighth Circuit has explicitly rejected this proposition. In the *Rutherford* case cited above, it set out to examine whether *Vaden* implicitly overruled prior decisions such as *Moses H. Cone*. *Rutherford*, 605 F.3d at 485-86. The underlying facts in *Rutherford* are similar to those here: a nursing home resident signed an admission agreement that included an arbitration clause. *Id.* at 485.[1] After the resident's death, the representative of the resident's estate filed tort claims in state court against the nursing home and its administrator. *Id.* The nursing home, but not the non-diverse administrator, filed a federal action to compel arbitration pursuant to 9 U.S.C. § 4, basing jurisdiction on diversity of citizenship between the nursing home and the state court plaintiff. *Id.* The representative did not contest the federal court's jurisdiction, and the parties proceeded to arbitration. *Id.*

In the meantime, the Supreme Court decided *Vaden.* The estate's representative then moved to vacate the court's arbitration order and argued that "a federal court does

---

[1] There were actually two separate actions to compel arbitration that the Eighth Circuit heard together. *Rutherford*, 605 F.3d at 485. The fact patterns, however, are almost identical. *Id.*

not have *diversity* jurisdiction over a § 4 petition to compel arbitration of claims that are part of a pending state court action that includes one or more non-diverse parties not named in the § 4 petition." *Id.*

The Eighth Circuit noted that prior to *Vaden*, every court of appeals had applied the same approach

> in resolving diversity jurisdiction disputes under § 4: They determined the first issue, whether there is diversity of citizenship, **by looking only to the parties in the federal action to compel arbitration**, whether or not the claim(s) to be arbitrated were part of a parallel state court action that included other, non-diverse parties, unless a non-diverse party would be necessary and indispensable to the federal action under Rule 19 of the Federal Rules of Civil Procedure.

*Id.* at 486 and n.2 (emphasis added) (gathering cases, citations omitted). Courts would then "look through" to determine "whether the value at stake in the arbitration being sought in the federal action could exceed $75,000, regardless whether the claim(s) to be arbitrated were part of a broader parallel state court action in which the total amount in controversy might be greater." *Id.* (quotation marks and citations omitted).[2]

In rejecting the argument that the *Vaden* holding should apply to § 4 petitions to determine diversity of citizenship for jurisdictional purposes, the *Rutherford* court emphasized two main points. First, the *Rutherford* court noted that the Supreme Court in *Vaden*

> carefully defined the issues and limited its holding to § 4 petitions based upon federal question jurisdiction:
>
> **we approve the "look through" approach <u>to this extent</u>**: A federal court may "look through" a § 4 petition to determine whether it is predicated on an action that "arises under" federal law; in keeping with the well-pleaded complaint rule . . . however, a federal court may not entertain

---

[2] While courts of appeals were unanimous in their approach to cases based on diversity jurisdiction, "a circuit split developed in deciding whether § 4 petitions to compel arbitration were supported by an independent basis of federal question jurisdiction." *Rutherford*, 605 F.3d at 487.

a § 4 petition based on the contents, actual or hypothetical, of a counterclaim.

*Id.* at 488 (quoting *Vaden*, 556 U.S. at 62 (emphasis added)).[3] Second, the *Rutherford* court found that application of the *Vaden* holding to diversity cases would implicitly overrule prior Supreme Court precedent: *Moses H. Cone*, 460 U.S. 1. *Id.* at 489-90.

Indeed, *Vaden* actually cited to *Moses H. Cone* with approval for the proposition that "'the controversy between the parties' means 'the substantive conflict' between the parties." *Id.* at 62-63. And, in *Moses H. Cone*, the Supreme Court observed:

> The Hospital points out that it has two substantive disputes here – one with Mercury, concerning Mercury's claim for delay and impact costs, and the other with the Architect, concerning the Hospital's claim for indemnity for any liability it may have to Mercury. The latter dispute cannot be sent to arbitration without the Architect's consent, since there is no arbitration agreement between the Hospital and the Architect. It is true, therefore, that if Mercury obtains an arbitration order for its dispute, the Hospital will be forced to resolve these related disputes in different forums. That misfortune, however, is not the result of any choice between the federal and state courts; it occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement.

*Moses H. Cone*, 460 U.S. at 19-20. Thus, the Supreme Court appears to have rejected Mr. Rhoden's "fairness" argument that Life Care should not be allowed "to commandeer Defendant's underlying action in the [state court] and shear off the portion of it that they desire, when they have no legitimate reason to so do." *Id.* at 9. Instead, this binding

---

[3] Mr. Rhoden argues that because the Architect was not a signatory to the arbitration agreement between Mercury and the Hospital, the Supreme Court in *Moses H. Cone did* look through to the underlying controversy. *See Doc. 37.* While the Court finds this argument logical, the Court is limited by the Supreme Court's holding in *Vaden*, which specifically limited the look-through approach to those petitions based on federal question jurisdiction. Mr. Rhoden supports his argument with cases that are not binding, nor do they address the issues the Court discusses in this Opinion. *See id.* (citing *U-Haul Co. of Cal. V. Williams*, No. 14-3018, 2014 WO 5768753 (E.D. Penn. Nov. 5, 2014) (looking through the petition and finding diversity did not exist, without any discussion of *Rutherford* or whether *Vaden* implicitly overruled *Moses H. Cone*); *Cytec Indus., Inc. v. Powell*, 630 F. Supp. 2d 680 (N.D. W. Va. 2009) (a pre-*Rutherford* case, which the *Rutherford* court explicitly declined to follow).

precedent gives Life Care that legitimate reason – Life Care is the "party aggrieved by the alleged failure, neglect, or refusal of [Mr. Rhoden] to arbitrate under a written agreement for arbitration . . . ." 9 U.S.C. § 4. The FAA does not require that *all* parties to a controversy bring the petition to the district court. *See id.* If that were the case, a party to an arbitration agreement such as Life Care would need the permission of every involved party – even those not subject to an arbitration agreement – before seeking to compel arbitration. *Moses H. Cone* stands for the proposition that such a result is not within the contemplation of the FAA.

In summary, it seems to this Court that the clear language of § 4 of the FAA would dictate the "look through" approach advocated by Mr. Rhoden. Nevertheless, the Court feels constrained to find, as did the Eighth Circuit in *Rutherford*, that it cannot. Although a "uniform test" in assessing federal subject matter jurisdiction in the arbitration context would seem more consistent with the language of § 4 of the FAA,[4] the Court reluctantly agrees with the Eighth Circuit on both of the above points from the *Rutherford* decision. The *Vaden* court could have overruled *Moses H. Cone* and extended its holding to all § 4 petitions to arbitrate, but it did not; instead, it expressly limited its holding to § 4 petitions based on federal question jurisdiction. As the Eighth Circuit has observed, "[t]he Supreme Court 'does not normally overturn, or so dramatically limit, earlier authority *sub silentio.*" *Rutherford*, F.3d at 490 (quoting *Shalala v. Ill. Council on Long Term Care, Inc.,* 529 U.S. 1, 18 (2000)).[5]

---

[4] *See* Kristen M. Blankley, *A Uniform Theory of Federal Court Jurisdiction under the Federal Arbitration Act,* 23 Geo. Mason L. Rev. 525 (2016).

[5] The Fifth Circuit recently addressed whether it was appropriate to extend the *Vaden* rationale to a case involving a § 4 petition that was removed to federal court based on diversity

In summary, the Court finds that the result reached here is in line with the

Supreme Court's consistent interpretation of the FAA, with its decision in *Moses H.*

*Cone*, and with *Vaden's* limited adoption of the "look through" approach for § 4 petitions

based upon federal question jurisdiction. Moreover, the result is in line with the

"traditional principle of diversity jurisdiction . . . that it cannot be defeated by a non-

diverse joint tortfeasor who is not a party to the federal action, unless that party is

---

jurisdiction. *See Lower Colo. River Auth. v. Papalote Creek II, LLC*, 858 F.3d 916 (5th Cir. 2017). It did so, however, in the context of a **"ripeness"** inquiry. *Id.* at 923.

The Fifth Circuit noted that for "Article III jurisdictional purposes, the litigation 'must be ripe for decision, meaning that it must not be premature or speculative.'" *Id.* at 922 (citations omitted). The *Papalote Creek II* court discussed the potential applicability of *Vaden* when assessing "any of the reasons" that may preclude the exercise of subject matter jurisdiction:

> ***Although Vaden concerned whether there was federal question jurisdiction, we see no reason that the holding is limited to only that specific jurisdictional issue*** . . . . Accordingly, *Vaden*'s holding necessarily implies that any of the reasons that a federal court may lack subject matter jurisdiction over the underlying dispute – *e.g.*, ripeness – would similarly prevent a district court from having jurisdiction to compel arbitration.

*Id.* at 923. The opposing party in that case had not addressed the *Vaden* decision in its briefing and instead had argued that "ripeness" was a jurisdictional "question for the arbitrator, not the district court." *Id.* The *Papalote Creek II* court disagreed and held that ripeness one of the necessary aspects of conferring jurisdiction on the federal court in the first place. The Fifth Circuit therefore held that a federal court lacked jurisdiction to order arbitration of a breach of contract claim when a breach had not yet occurred. *Id.* at 927. The *Papalote Creek II* case is therefore distinguishable – it extended the use of the *Vaden* rationale to assessing the **ripeness** of the underlying controversy, not to assessing the existence of federal **diversity** jurisdiction over an entire dispute.

The Eighth Circuit has also applied *Vaden* to determine whether the **"amount in controversy"** in a diversity-based § 4 petition satisfied the jurisdictional minimum by looking through to "the entire, actual controversy between the parties, as they have framed it." *CMH Homes, Inc. v. Goodner,* 729 F.3d 832, 836-38 (8th Cir. 2013) (quoting *Vaden,* 556 U.S. at 66). The *Goodner* court distinguished application of *Vaden* as to the amount in controversy inquiry from its inapplicability to determining citizenship of the parties for jurisdictional purposes.

indispensable under Rule 19." *Rutherford*, 605 F.3d at 490-91 (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7, (1990)).

**B.  The state court defendants are not indispensable under Rule 19.**

Defendant has moved to dismiss under Federal Rule of Civil Procedure 12(b)(7) for failure to join a party and argues that the state court defendants are necessary and indispensable pursuant to Rule 19. *Doc. 13* at 11-16 (citing Fed. R. Civ. P. 19).

Courts use a three-part analysis to decide whether a party is indispensable. *Begay v. Pub. Serv. Co. of N.M.*, 710 F. Supp. 2d 1161, 1182 (D.N.M. 2010) (citing *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001) (internal citation omitted)).

> First, the Court determines, under rule 19(a), whether the party is a required or "necessary" party. A party is required if the party can be served with process, its joinder will not deprive the court of subject-matter jurisdiction, and:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

*Id.* (quoting Fed. R. Civ. P. 19(a)). "If a person is required, but has not been joined, the court must determine whether joinder is feasible." *Id.* (citing *Citizen Potawatomi Nation*, 248 F.3d at 997). "If the party is required but cannot be joined, the Court must then determine under rule 19(b) whether the party is indispensable." *Id.*

"To conclude that a party is indispensable, the Court must find 'in equity and good conscience' that the action should not proceed in the party's absence." *Id.* (quoting

Fed. R. Civ. P. 19(b); citing *Sac & Fox Nation of Mo. v. Norton*, 240 F.3d 1250, 1259 (10th Cir. 2001)).

> In making this determination, the Court, using its discretion, balances the following factors:
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>     (A) protective provisions in the judgment;
>     (B) shaping the relief; or
>     (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* (quoting Fed. R. Civ. P. 19(b); citing *Thunder Basin Coal Co. v. Sw. Pub. Serv. Co.*, 104 F.3d 1205, 1211 (10th Cir. 1997)).

### 1. The state court defendants are "necessary."

Defendant argues that the Facility is a "necessary" party, because it is a signatory to the Arbitration Agreement, and because granting Life Care's Motion would force Plaintiff to pursue his claims in multiple proceedings. *Doc. 13* at 13. The Court agrees that the conditions of Rule 19(a)(ii) are met in this case. In fact, all of the non-diverse state court defendants are necessary under Rule 19(a)(ii), as the Arbitration Agreement expressly provides that "[a]ll claims based in whole or in part on the same incident, transaction, or related course of care or services provided by the Facility to the Resident, shall be arbitrated in one proceeding." *Doc. 1-2* at 2. The Sixth Circuit found as much in *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 201 (6th Cir. 2001).

In *PaineWebber*, the state court plaintiff, Mr. Cohen, had signed a contract and arbitration agreement with PaineWebber that applied not only to the signatories, but also to PaineWebber's employees. *Id.* The Sixth Circuit affirmed the district court's

finding that a PaineWebber employee, who was a non-diverse state court defendant not joined in the federal motion to compel arbitration, was a "necessary" party under Rule 19 due to the language in the contract that covered the employees. *Id.*

### 2. The state court defendants are not "indispensable."

Because the state court defendants are citizens of the New Mexico – the same state as Mr. Rhoden – their joinder would destroy diversity jurisdiction. Thus, the Court turns to whether any of the state court defendants are "indispensable" under Rule 19(b).

In *THI of New Mexico at Vida Encantada, LLC v. Lovato*, 848 F. Supp. 2d 1309 (D.N.M. 2012), District Judge Martha Vazquez noted that "[i]n the context of a federal action to compel arbitration, 'every circuit to consider the issue has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19.'" 848 F. Supp. 2d at 1317 (quoting *Rutherford*, 605 F.3d at 491). The Court finds, however, that the facts in this case are distinguishable from those in both *Lovato* and *Rutherford*. Here, at least one of the non-diverse state court defendants was a signatory to the Arbitration Agreement, and the Agreement provides that all claims were to be arbitrated in a single proceeding. Neither of these factors was present in *Lovato* or *Rutherford*. For this reason, the Court finds it prudent to look more closely at whether it is appropriate to define the non-diverse state court defendants as "indispensable."

The parties presented no authority – binding or otherwise – with an analogous set of facts.[6] The Court performed its own diligent search and found only a few cases that have shed light on this issue.

---

[6] Mr. Rhoden asserts that the Sixth Circuit's decision in *Jenkins v. Reneau*, 697 F.2d 160 (6th Cir. 1983), supports his position. *See* Doc. 13 at 14.

First, in *Patriot Manufacturing, Inc. v. Dixon*, No. CIV.A.05-0321-WS-M, 2005 WL 2233071 (S.D. Ala. Sept. 1, 2005), one of three state court defendants (Patriot) filed a federal action to compel arbitration. 2005 WL 2233071, at *1. The state court plaintiff asserted that the federal court lacked subject matter jurisdiction, because one of the remaining non-diverse state court defendants (not a party to the federal action), was also a signatory to the arbitration agreement that Patriot sought to enforce. *Id.* at *4. The state court plaintiff also argued for dismissal of the federal action pursuant to Rule 19 because the signatory was indispensable to the suit and its addition would destroy diversity. *Id.* Similarly, Mr. Rhoden argues here that the Facility – a signatory to the Arbitration Agreement – qualifies as "indispensable," because its "interest in enforcing the Arbitration Agreement may be effectively precluded by any decision of this Court via issue preclusion." *Doc. 13* at 13.

The *Patriot* court acknowledged that "[t]here may be sound reasons for a single court to adjudicate a case where there is a risk that one court might compel arbitration

---

In *Jenkins*, the defendants filed a motion to dismiss for failure to join an indispensable party and for lack of diversity jurisdiction. 697 F.2d at 161. The defendants were partners in a law firm that had contracted to represent two of the heirs of Flora Jenkins in an action against the nursing home where Ms. Jenkins was fatally injured. *Id.* The plaintiff, one of the two heirs, sued the defendants for legal malpractice. *Id.* The trial court agreed with the defendants that the other heir was an indispensable party, and that joinder of the other heir would destroy diversity jurisdiction. *Id.* On appeal, the Sixth Circuit upheld the district court's decision, determining that both heirs were required to be joined because any duty owed to the plaintiff arose from the contract with the law firm to which both heirs were parties. 697 F.2d at 162. In reaching its decision, the court explained that in cases in which plaintiffs are jointly affected by a tort, Tennessee law requires joinder. *Id.*

*Hill v. White*, 167 F.R.D. 47, 49 (M.D. Tenn. 1996). "Unlike the factual situation in *Jenkins*, and the cases cited by the *Jenkins* court, however," a decision on one of the claims in the instant case does not necessarily dictate the same decision as to all of the defendants. Hill, 167 F.R.D. at 50 (noting that the *Hill* plaintiffs "d[id] not jointly possess an identical claim" as did the heirs in *Jenkins*). Thus, *Jenkins* is inapposite.

and another court might deem an arbitration agreement invalid or unenforceable, thereby creating a factual and legal 'whipsaw.'" *Patriot Manufacturing, Inc.*, 2005 WL 2233071, at *5 (citing *Owens-Ill., Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999)); *see also PaineWebber, Inc.*, 276 F.3d at 201 ("deeming missing defendant a necessary party because state court plaintiff would be faced with inconsistent procedural remedies if the federal and state courts reached different conclusions regarding whether arbitration clauses apply")); *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1051 (D. Or. 2004) (finding non-diverse state court defendant, which was a signatory to the arbitration agreement at issue, was not indispensable pursuant to Rule 19). But, as in *Patriot*, Mr. Rhoden fails "to make any showing that such a risk exists here," because the issue of arbitration is not currently before the state court.[7] *See Patriot Mfg., Inc.*, 2005 WL 2233071, at *5. Moreover, the *Patriot* court found the absent party was not indispensable, because the state court plaintiff still had the option of proceeding against it in state court. *Id.* at *6-7. The Court finds this reasoning persuasive.

The Sixth Circuit's decision in *PaineWebber* bolsters this finding. *See* 276 F.2d at 202. There, the state court plaintiff Cohen "focuse[d] on the potentially inconsistent legal obligations that might result from conflicting interpretations of the arbitration clauses by state and federal courts" as well as on "the possibility of being involved with proceedings in both federal and state court because of the duplicate efforts and the risk of conflicting and inconsistent schedules, arbitration awards, discovery processes, and legal doctrines." *Id.* Like Cohen, Mr. Rhoden contends that he would be prejudiced if the

---

[7] Not only is the issue of arbitration not currently before the state court, but as Defendant asserts in his Reply brief, the issue is not likely to surface due to Rule 1-007.2 NMRA. *See Doc. 23* at 4-5. The Court discusses Rule 1-007.2 further *infra* in Section III(C).

Court grants Life Care's Motion, because he will be forced to proceed simultaneously in two proceedings. *Doc. 13* at 13. Further, Defendant argues, the very terms of the Arbitration Agreement require all claims to be arbitrated in one proceeding, which may not happen if the Court grants Life Care's Motion without joining the remaining state court defendants. *Id.* at 14.

This potential for prejudice is Mr. Rhoden's strongest argument. Because Mr. Rhoden's underlying substantive claims against the Facility are intertwined with his claims against Life Care, there is a possibility of inconsistent judgments. Under Rule 19(b), however, the Court may look at "the extent to which any prejudice could be lessened or avoided by . . . protective provisions in the judgment; . . . shaping the relief; or . . . other measures." Fed. R. Civ. P. 19(b)(2). As Life Care asserted at oral argument on this issue, if the Court orders Defendant to submit his claim to arbitration, Mr. Rhoden will "have the power to identify any party" he wants to add to the arbitration. *Doc. 31* at 33:19-34:1. He "can name all of the parties that [he] listed in the state court claim[,]" thus all his claims may be decided together. *Id.* at 34:1-3. Consequently, Mr. Rhoden has the ability to mitigate or even eliminate any potential prejudice he has identified.

Moreover, like the Sixth Circuit in *PaineWebber*, this Court finds that the potential for prejudice is "a direct result of [Defendant's] decision to file a suit . . . in state court rather than to demand arbitration under the" parties' contract. *PaineWebber, Inc.*, 276 F.2d at 202. Mr. Rhoden's "status as the state court plaintiff and [the Facility's] position as a defendant in the state court action are of crucial significance in this regard." *Id.* (citations omitted).

Yet, "[e]ven if the parallel proceedings were not the result of [Defendant's] pending state court action, the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *Id.* (citing *Moses H. Cone*, 460 U.S. at 20 ("the possibility of the plaintiff having to resolve its disputes in two forums – one in state court and one in arbitration – where one of the parties to the underlying dispute was not a party to the arbitration agreement, 'occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement'"); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 446 (2d Cir. 1995) ("concluding that the FAA's 'strong bias in favor of arbitration' overcomes any possible prejudice due to piecemeal litigation caused by the absence of certain parties to the arbitration agreement")).

For these reasons, the Court finds that the non-diverse state court defendants are not indispensable under Rule 19, and the Court declines to grant Mr. Rhoden's Motion on this issue. With its jurisdictional basis secure, the Court further finds that Mr. Rhoden's other arguments relevant to subject matter jurisdiction, regarding the threat of piecemeal litigation and the principles of comity, unpersuasive. *Doc. 13* at 8. Consequently, the Court rejects Mr. Rhoden's argument that the reasoning in *Vaden* requires a result different from that in the vast majority of cases to have examined this issue. The Court will deny Mr. Rhoden's Motion to Dismiss on this issue.

**C. Life Care has not waived its right to arbitrate.**

Mr. Rhoden argues that Life Care has waived its right to seek arbitration, because it substantially engaged in the litigation process in state court, and it waited nearly five months after filing its answer in state court before filing its Complaint to

Compel Arbitration in this Court. *Doc. 13* at 16-24; *see also Doc. 14* at 4-5. Courts look at several factors to determine if a party has waived its right to arbitrate:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Cornoyer v. AT&T Mobility Servs., LLC*, No. CIV 15-0474 JB/WPL, 2016 WL 6404853, at *11 (D.N.M. Oct. 5, 2016) (quoting *Healey v. Cox Commc'ns (In re Cox Enters., Inc.)*, 790 F.3d 1112, 1116 (10th Cir. 2015)). Another "important consideration in assessing waiver is whether the party now seeking arbitration is improperly manipulating the judicial process." *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 773 (10th Cir. 2010). "The critical question is what was happening in this litigation during the [almost five] months between the answer to the complaint and the demand for arbitration." *Id.* at 775.

Counsel for the state court defendants initiated discovery, though purportedly only on behalf of the Facility.[8] *See Doc. 13-C* (Certificate of Service listing only

---

[8]  Greater detail regarding the discovery and related correspondence is set forth below:

Counsel for all state court defendants, on behalf of the Facility only, propounded the first set of discovery requests to Mr. Rhoden on November 1, 2016. *Doc. 13-C*. Mr. Rhoden responded to these discovery requests on December 2, 2016. *Doc. 13-E*. On December 22, 2016, Ms. Hernandez contacted counsel for Mr. Rhoden and asserted several objections regarding Mr. Rhoden's answers, responses, and objections to the Facility's discovery requests. *Doc. 13-L*. Ms. Hernandez suggested a conference call to resolve the discovery disputes. *Id.* at 4. Ms. Hernandez stated that in the absence of a response, "we will reasonably assume that [Mr. Rhoden] does not intend to resolve these disputes, and we will file a motion to compel." *Id.* The parties met by phone on January 9, 2017, and resolved many of the disputed issues. *See Doc. 13-M*.

"Defendant Farmington Operations, LLC"). When Mr. Rhoden's responses were not satisfactory, the state court defendants requested a conference call to resolve the disputes. *Doc. 13-L.* In the event the disputes could not be resolved, the state court defendants advised Mr. Rhoden they would file a motion to compel. *Id.* at 4. Counsel for Life Care explained at the hearing that parties are required to serve such a letter under state court Rule 1-037 NMRA. *Doc. 31* at 25:16-26:16.

The state court defendants – including Life Care – stipulated to a scheduling order. *Docs. 13* at 19; *13-N.* The state court conducted a scheduling conference wherein the presiding state court judge set a 2018 trial date. *Docs. 13* at 19; *13-O.* The

---

Mr. Rhoden propounded his first set of discovery requests to the state court defendants on November 7, 2016. *Doc. 13-D.* The discovery requested included Requests for Admission, Requests for Production, and Interrogatories. *Id.* Ms. Hernandez emailed counsel for Mr. Rhoden on December 21, 2016. *Doc. 13-F.* Ms. Hernandez wrote:

> [Mr. Rhoden] has served discovery addressed to "all defendants". It appears to me that you would like the facility to respond to these questions, as they will be the source of this information, as opposed to the individual defendants. If we do responses by every individual defendant it would be duplicative and time consuming, and some questions only the facility would know. Would you agree that we can respond on behalf of the facility initially, and that if you need specific responses by the individual defendants, you would let us know.

*Id.* at 2. Counsel for Mr. Rhoden agreed to Ms. Hernandez's request. *Id.* at 1. The Facility responded to Mr. Rhoden's Interrogatories and Requests for Production on January 6 and January 9, 2017. *Doc. 13-G.*

Ms. Hernandez emailed counsel for Mr. Rhoden separately about the Requests for Admission on November 15, 2016. *Doc. 13-I* at 2. Ms. Hernandez noted that the Requests for Admission are "addressed at *every* defendant in this case." *Id.* at 2. She asked if it was Mr. Rhoden's intent "to have each defendant respond to all of" the requests. *Id.* Counsel for Mr. Rhoden responded that it was their "general policy . . . to seek admissions from each of the defendants, as different facilities operate with different heads running various aspects of the facility. However, if you believe that some of these requests would be better directed to certain defendants, I am willing to at least look at limiting those RFAs to that request." *Id.* Ms. Hernandez replied, "May I suggest that we respond initially for the business entities and then you can let us know if you need the individuals to respond and if so for which requests?" *Id.* Counsel for Mr. Rhoden indicated his agreement. *Id.* at 1. Despite this email exchange, none of the state court defendants ever responded to Mr. Rhoden's Requests for Admission. *See Doc. 13* at 19.

Court notes that a party's decision to engage in limited discovery and the setting of deadlines and a trial date is not necessarily, without more, sufficient to constitute waiver. *See Hill*, 603 F.3d at 772-76.

Mr. Rhoden argues that of greatest significance is the conduct of counsel for the state court defendant in response to Mr. Rhoden's discovery requests. *Doc. 13* at 19, 21-22. Ms. Hernandez sought permission for the Facility only – without Life Care or the other defendants – to answer the discovery requests. *Doc. 13-F* at 2; *13-I*. Life Care asserts in its Response to the Motion to Dismiss that the Facility "needed to respond to the first round of discovery since it was best situated . . . to address questions . . . ." *Doc. 20* at 10. Counsel for the state court defendants proceeded to answer some of Mr. Rhoden's requests, but it left others unanswered, at least one of which was specifically directed toward Life Care. *Doc. 13-H* at 2.

Mr. Rhoden contends that because Life Care failed to respond to the Requests for Admission, they are deemed admitted in state court. *Doc. 13* at 21. *See also* Rule 1-036 NMRA ("The matter is admitted unless, within thirty (30) days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter . . . ."). Mr. Rhoden maintains that he will incur prejudice if Life Care is allowed to avoid the consequences of its failure to respond to his discovery requests by ending its participation in the state court and moving to compel arbitration, where the Requests for Admission will not be deemed admitted. *Doc. 13* at 21-22.

The Court finds that while Mr. Rhoden's argument regarding prejudice is weighty, it is insufficient to establish that the state court defendants had substantially invoked the litigation machinery or improperly manipulated the judicial system.[9] *See Cornoyer*, 2016 WL 6404853, at *11. Thus, Mr. Rhoden fails to show that Life Care waived its right to arbitration.

Mr. Rhoden raised an additional ground to support his argument for waiver in his Reply brief. He argues that Life Care is "precluded from seeking arbitration in state court because of a newly enacted rule[,]" Rule 1-007.2 NMRA. *Doc. 23* at 4. Rule 1-007.2 provides that "[a] party seeking to compel arbitration of one or more claims shall file and serve on the other parties a motion to compel arbitration no later than ten (10) days after service of the answer or service of the last pleading directed to such claims." The rule became effective on December 31, 2016, almost four months **after** Defendant filed his lawsuit in state court. *See id.* However, the new rule is effective retroactively. The New Mexico Supreme Court's Order adopting Rule 1-007.2 specifically provides that the "new rule shall be **effective for all cases pending or filed on or after December 31, 2016** . . . ."[10] *See Nov. 1, 2016 Order*, available at

http://www.nmcompcomm.us/nmrules/ NMRules/16-8300-023.pdf (last visited August 8,

---

[9] Counsel for Life Care stated that the Requests for Admission the state court defendants failed to answer would be allowable discovery under AAA rules. *See Doc. 31* at 31:7-32:7. Under the grant of authority given to the arbitrator under the AAA rules, Mr. Rhoden would presumably have the option of either propounding the same requests to Life Care in the arbitration proceedings, or filing a motion with the Arbitrator to have those requests deemed admitted under the circumstances. *See Doc. 21-2* at 14-15 (Commercial Arbitration Rules and Mediation Procedures R-22, describing "Pre-Hearing Exchange and Production of Information" and the corresponding "Authority of arbitrator," and R-23, outlining the "Enforcement Powers of the Arbitrator").

[10] "A statute or rule operates prospectively only unless the statute or rule expressly provides otherwise or its context requires that it operate retrospectively." N.M. Stat. Ann. § 12-2A-8 (1978).

2017) (attached as Ex. 1 to this Mem. Op. & Order). Because the state court proceedings were pending on December 31, 2016, and the new rule operates retrospectively, Defendant argues that Life Care is now barred from moving to compel arbitration in the state case. *See id.*

Rule 1-007.2 provides a time limit that is analogous to a statutory filing deadline. "Statutory filing deadlines are generally subject to the defenses of waiver, estoppel, and equitable tolling." *United States v. Locke*, 471 U.S. 84, 94 n.10 (1985) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392-98 (1982)). The New Mexico Supreme Court has stated:

> To constitute a waiver, there must be an existing right, a knowledge of its existence, and an actual intention to relinquish it, or such conduct as warrants an inference of the relinquishment. It is a voluntary act and implies an abandonment of a right or privilege. In no case will a waiver be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless, by his conduct, the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to.

*Brown v. Jimerson*, 619 P.2d 1235, 1236 (N.M. 1980) (quoting *Ed Black's Chevrolet Ctr., Inc. v. Melichar*, 471 P.2d 172, 174 (1970) (internal citations omitted)). Clearly, Rule 1-007.2 was not in effect at the time Life Care answered the state court complaint. *Doc. 14* at 12. There is no evidence that Life Care had knowledge of Rule 1-007.2 prior to its retroactive application to this case or that Life Care intended to relinquish its right to compel arbitration. Nor has Defendant alleged that Life Care misled him into believing that it intended or consented to such a waiver.

Moreover, Defendant has cited no authority to establish that Rule 1-007.2 binds this Court and "overcome[s] the strong federal policy supporting arbitration." *See PaineWebber, Inc.*, 276 F.3d at 207 (citations omitted). "The Arbitration Act establishes

that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25. For all of these reasons, the Court declines to find that Life Care waived its FAA right to compel arbitration.

### D. Life Care is not equitably estopped from moving to compel arbitration.

Mr. Rhoden posits that Life Care should be equitably estopped from compelling arbitration due to the very terms of the Arbitration Agreement. Mr. Rhoden asserts that Life Care "must bear the burdens of the agreement[,]" which requires that all claims be arbitrated in one proceeding. *Docs. 13* at 24-25; *14* at 6. This argument fails for the reason the Court discussed above – Life Care needed to seek an order compelling arbitration precisely because Mr. Rhoden filed suit in state court rather than abiding by the terms of the contract.

Moreover, as Life Care asserted at oral argument on this issue and as discussed above, if the Court orders Defendant to submit his claim to arbitration, Mr. Rhoden will "have the power to identify any party" he wants to add to the arbitration. *Doc. 31* at 33:19-34:1. Because Mr. Rhoden "can name all of the parties that [he] listed in the state court claim[,]" all the Estate's claims may be decided together. *Id.* at 34:1-3. Ultimately, the Court finds that Life Care is not equitably estopped from moving to compel arbitration.

### E. The Arbitration Agreement is not rendered unenforceable because it requires the parties to use AAA procedural rules.

Finally, Mr. Rhoden argues that the Arbitration Agreement is unenforceable because it requires the parties to use the AAA's procedural rules, which by their terms

"require a post-dispute agreement to" arbitrate in circumstances such as those here. *Doc. 14* at 4 (citing *Doc.14-B*, the AAA Healthcare Policy Statement, which observes: "As a result of a review of its caseload in the health care area, the American Arbitration Association has announced that it will no longer accept the administration of cases involving individual patients without a post-dispute agreement to arbitrate").

As Life Care points out, however, the current Healthcare Policy Statement provides that "the AAA will administer disputes between patients and healthcare providers to the extent a court order directs such a dispute to arbitration where the parties' agreement provided for the AAA's rules or administration." *Doc. 21* at 2 (quoting *Doc. 21-A* (AAA Healthcare Policy Statement)); *see also* AAA Healthcare Policy Statement, accessible at https://www.adr.org/sites/default/files/document_ repository/AAA_Healthcare_Policy_Statement.pdf (last visited June 30, 2017). Having found that the current Policy Statement applies, the Court's order compelling arbitration will direct that "the arbitrators . . . apply the applicable rules of procedure of the AAA" as provided for in the parties' Arbitration Agreement. *See Doc. 1-2.*

## IV. Conclusion

The Court finds that it has subject matter jurisdiction over Life Care's Complaint, and the state court defendants are not indispensable parties under Rule 19. Life Care has not waived its right to compel arbitration, nor is it equitably estopped from compelling arbitration. Finally, the Court finds the Arbitration Agreement is enforceable, notwithstanding the 2003 AAA Healthcare Policy Statement. The United States Supreme Court has consistently held "that the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin.*

*Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000) (citations omitted). Mr. Rhoden has failed to do so.

Wherefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

(1) Defendant's Motion to Dismiss (*Doc. 13*) is **denied**;

(2) Plaintiff's Motion and Memorandum of Law in Support of Its Motion to Compel Arbitration (*Doc. 5*) is **granted**;

(3) Defendant shall file the matter for arbitration as provided for in the Arbitration Agreement;

(4) the arbitrator(s) shall use the AAA procedural rules as provided for in the Agreement and as allowed by the current AAA Healthcare Policy Statement; and

(5) having ordered the parties to arbitration, this case is hereby **dismissed,** and a Rule 58 Final Order shall be entered concurrently herewith.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent